Sidney Alper and Sydelle Alper v. Commissioner.
Alper v. Commissioner
Docket No. 55715.
United States Tax Court
T.C. Memo 1956-271; 1956 Tax Ct. Memo LEXIS 29; 15 T.C.M. (CCH) 1415; T.C.M. (RIA) 56271; November 30, 1956
*29 Aaron M. Diamond, Esq., 132 West 43rd Street, New York, N. Y., for the petitioners. Joseph F. Rogers, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: Respondent determined deficiencies in income tax of $1,960.34 for 1948 and $276.40 for 1949. The parties stipulated settlement of all issues except one. The remaining issue is whether respondent erred in allocating to a covenant not to compete a portion of the proceeds from a transaction in which Sidney Alper sold his stock in a corporation. Findings of Fact Certain facts are stipulated and are hereby found. Sidney Alper, hereafter referred to as petitioner, and his wife, Sydelle Alper, filed joint individual income tax returns for 1948 and 1949 with the collector of internal revenue for the third district of New York. Sydelle Alper is involved here only because of the joint return. In May 1947, petitioner purchased stock in Barclay Lunch, Inc., hereafter referred to as the corporation, which engaged in the luncheonette business. Until he sold the stock in February 1948, he and Samuel Greenfield operated the luncheonette. The luncheonette was located in downtown New York *30 City about a half block from New York University. The luncheonette did a thriving business serving thousands of students each day. Many customers who walked in at lunch time could not be accommodated for lack of seats. Petitioner knew no customers by name and was acquainted with only about twenty or thirty. He built up little personal following. Other stockholders of the corporation were Leon Ackerman and Gertrude Greenfield. Each stockholder owned one-third of the shares. Following a prolonged conference on February 18, 1948 at their attorney's office, they sold all their stock in the corporation to Joseph Cohen, Allen Tillis and Michael Conner. Those present at the conference included the three sellers, the three buyers, an attorney for each group and the buyers' accountant. Because the corporation occupied its premises under a nonassignable lease, the buyers agreed to buy the stock of the corporation. The buyers paid $27,765 in cash for the stock. They assumed an existing mortgage carried on the corporate books at $15,000 and a total additional amount of $42,235 was to be paid in monthly installments. The parties agreed that the series of 59 monthly payments totaling $42,235 *31 would be represented by notes of the corporation. As security for the payments the corporation executed a 5-year chattel mortgage on its fixtures in favor of the sellers. The sellers executed a covenant not to compete recited to be "in consideration of" the $42,235 to be paid by 59 notes and secured by a chattel mortgage on the corporate fixtures. The covenant prohibited their engaging for 5 years in a business competitive with the corporation in an area extending 2 blocks north, east and west of the luncheonette and 6 blocks south. The consideration of the covenant not to compete was not arrived at by bargaining but was set according to the sellers' instruction. Although a covenant not to compete is a normal part of this type of sale, its allocable value rarely is negotiated. The buyers would not have completed the transaction without a protective covenant. The buyers assumed they had contracted to pay over $80,000 for the stock which represented the business as a whole including fixtures, lease, goodwill, restrictive covenant, and other things. The parties did not negotiate a selling price for any separate items. When the buyers' accountant requested a ruling from the Commissioner *32 of Internal Revenue, he stated that the "Agreed price of stock" was $85,000. After the sale, the restrictive covenant was entered on the corporation books as an expense item, represented by 59 notes payable. The corporation took deductions for amortization of the cost of the covenant over a 5-year life. Petitioner treated his proportionate share of the total cash and notes received as in payment for the stock, and reported the gain as long-term capital gain, allocating nothing separately to the covenant not to compete. The sellers did not execute the covenant not to compete as a transaction separate from the sale of the stock, it was not separately bargained for, and no part of the total consideration was agreed to be paid as a severable consideration for it. Opinion Petitioners reported as capital gain the proceeds of a transaction by which they sold their stock in a corporation operating a luncheonette. Respondent claims that approximately half of the total consideration was paid for a covenant not to compete, which he says is ordinary income to petitioners and not capital gain. As in , affd. (C.A. 10) , *33 "The nub of the question is whether the agreement not to compete was actually dealt with as a separate item in the transaction * * *." In , we found that "The covenant not to compete was never actually dealt with as a separate item in the business transaction, never bargained for, never evaluated." "On the evidence in this case we reach the same conclusion * * * as to the nature of the contract, that it was not divisible, but that the total consideration * * * was the price * * * paid for the going business and intangible assets, including the good will and the covenant not to compete." , affd. (C.A. 6) , certiorari denied . In describing the transaction in a practically contemporaneous letter to respondent on which he now heavily relies, the buyers' representative begins his description of the transaction by using the significant phrase "Agreed price of stock $85,000." [Italics added.] This was the total amount paid. [1]
*34 We are satisfied that the purchasers of the stock required that the sellers agree not to compete and that very probably without such an agreement there might have been no sale. But what they were buying was an entire business including goodwill. "We are convinced that the total consideration paid was the agreed-upon price of the stock * * * and that the covenant not to compete was but an incidental factor meant to assure the effective transfer of the * * * goodwill." . Certainly the price appearing to be the consideration for the covenant is wholly unrealistic unless it also incorporates the earning power of the corporation's business. We accept the testimony of petitioner's then attorney, as to which indeed there is no conflict, that the transaction was cast in that form purely as a matter of convenience. None of the buyers could testify that they bargained separately with respect to the consideration to be paid for the covenant. Cf. And indeed no such conclusion is possible from all the evidence. On authority of , this issue is determined in petitioners' favor. *35 In order to give effect to the stipulation of the parties settling two other issues, Decision will be entered under Rule 50. Footnotes
1. In addition, one of the buyers testified: "I paid for the fixtures, for the lease, for the good will, for the restrictive covenant and maybe I overlooked a couple of things at the moment, sitting here, but I paid for it all."↩